******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CARL DELVECCHIO *v.* COMMISSIONER
OF CORRECTION
(AC 34851)

Alvord, Bear and Schaller, Js.

*Argued December 5, 2013—officially released April 15, 2014*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Mary H. Trainer*, assigned counsel, for the appellant (petitioner).

*David J. Smith*, senior assistant state's attorney, with
whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Carl Delvecchio, appeals from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly determined that he was provided with effective assistance of counsel. We affirm the judgment of the habeas court.

The habeas court made the following findings of fact. In March, 2006, a string of armed robberies occurred over the course of a single evening in Norwich and Montville. Witnesses to the robberies described to the police what the assailants looked like, what they were wearing, and what vehicle they were driving. The police later stopped a vehicle occupied by two individuals matching the witnesses' descriptions. During the stop, the police conducted a "drive-by show-up" identification procedure.[1] After the witnesses identified the petitioner as one of the assailants, the police arrested him. The petitioner was charged in four separate informations with robbery in the first degree in violation of General Statutes § 53a-134, larceny in the second degree in violation of General Statutes § 53a-123, possession of a firearm without a permit in violation of General Statutes § 29-35a, and criminal possession of a firearm in violation of General Statutes § 53a-217. In three of the four informations, he was charged with attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 and 53a-134. In addition, he was charged with violation of probation.[2]

Shortly after his arrest, the petitioner's family hired Attorney Robert Cary to represent the petitioner. Cary, who had represented the petitioner in previous matters, was in possession of the petitioner's mental health records and was familiar with the petitioner's mental health history. Consequently, at the petitioner's first court appearance, Cary informed the court of the petitioner's mental health history and prescription medications, and asked that the petitioner be placed on suicide watch. Throughout the pretrial proceedings, Cary routinely checked the state's file in lieu of a formal discovery request.[3]

The state initially offered the petitioner a plea agreement of nine years imprisonment followed by six years special parole. The petitioner rejected this offer and his case was placed on the trial list. At a pretrial conference, the trial court informed Cary that the petitioner should expect to receive the maximum sentence if convicted. Cary, in turn, explained the trial court's position on sentencing to the petitioner, and the petitioner expressed concern to Cary over the possibility of a harsh sentence if convicted. Thereafter, shortly before trial, the court offered to resolve all of the petitioner's charges in exchange for a sentence of ten years

imprisonment followed by five years special parole. Cary then discussed the offer, as well as the risk of going to trial and facing a harsher sentence, with the petitioner. He explained to the petitioner that the state could establish a violation of probation, resulting in approximately four and one-half years imprisonment. In addition, he explained the state's evidence regarding the other charges to the petitioner, which included the testimony of at least one victim who could identify the petitioner, the presence of the victim's identification card in the petitioner's vehicle when he was arrested, and the testimony of the petitioner's codefendant. Cary thought the court's offer, under the circumstances, was a good one. He urged the petitioner to accept it. The petitioner decided to accept the court's offer.

The petitioner subsequently pleaded guilty to two counts of robbery in the first degree and admitted to a violation of probation.[4] Cary believed that the petitioner was coherent and capable of making the decision to plead guilty. The court conducted a thorough plea canvass, informing the petitioner that if he were convicted on the robbery charges alone, he faced up to forty years imprisonment, in addition to the four and one-half years imprisonment for violation of probation. In addition, the court inquired whether the petitioner understood that by pleading guilty, he was waiving his right to a trial. The petitioner stated that he understood. After the court accepted the pleas, however, the petitioner requested to address the court. After the court granted his request, the petitioner denied committing the robberies. The court then ordered a recess, during which the petitioner consulted with Cary. Following the recess, the court explained to the petitioner that if he denied committing the crimes but believed the state had enough evidence to convict him, he could plead guilty pursuant to the *Alford* doctrine.[5] The petitioner indicated that he wanted to do so. The court then ordered that the plea canvass would stand and that both pleas would be changed to *Alford* pleas. The court set sentencing for a later date.

Before the sentencing hearing, Cary withdrew as the petitioner's counsel. The court appointed Attorney Gregg W. Wagman to represent the petitioner. Wagman subsequently filed a motion to vacate the petitioner's pleas, but did not request an evidentiary hearing in connection with the motion. Thereafter, at the sentencing hearing, the court denied the motion. The court then sentenced the petitioner to ten years of imprisonment, followed by five years of special parole, and terminated the petitioner's probation pursuant to the terms of the plea agreement. The petitioner subsequently appealed his conviction to this court. During the pendency of the appeal, the petitioner's appellate counsel filed a motion to withdraw as counsel on the ground that the appeal was frivolous. The trial court granted appellate counsel's motion to withdraw, and this court subsequently

disposed of the petitioner's appeal on its own motion.

On August 18, 2011, the petitioner filed a second amended petition for a writ of habeas corpus alleging that Cary and Wagman rendered ineffective assistance of counsel in a variety of ways. Following a trial, the habeas court rejected the claims of ineffective assistance and denied the petition.[6] The petitioner then filed a petition for certification to appeal to this court, which the habeas court granted. This appeal followed.

The applicable standard of review and principles of law governing claims of ineffective assistance of counsel are well settled. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

"Furthermore, it is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington* [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, supra, 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 677–78.

"In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 147 Conn. App. 343, 349, 81 A.3d 1226 (2013), cert. granted, 311 Conn. 921, A.3d (2014). "The prejudice inquiry in claims arising from counsel's advice during the plea process differs from the analysis of claims following conviction after trial."[7] *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 472, 72 A.3d 426 (2013). In *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d. 203 (1985), the Supreme Court of the United States "articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea." *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 151, 662 A.2d 718 (1995). In order to establish prejudice in such cases, the petitioner must demonstrate "that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[8] *Hill* v. *Lockhart*, supra, 59.

In the present case, the habeas court concluded that even if counsels' performance was deficient, the petitioner still would have pleaded guilty. This conclusion is premised on the court's finding that the petitioner opted to plead guilty precisely because he was concerned that a trial would result in his conviction and a harsher sentence than the plea offer. Our review of the record indicates that the primary source of the petitioner's concern that his trial would result in a conviction was the potential testimony of his codefendant. Contrary to the petitioner's argument, both Cary and Wagman independently confirmed that the petitioner's codefendant would have testified against him if the petitioner's case went to trial. Moreover, Cary testified at the habeas trial that the petitioner repeatedly expressed that he had "huge concerns about being convicted" and that his codefendant was going to "hang" him. Before pleading guilty, the petitioner was aware of the trial court's position on sentencing if he were convicted following a trial, he had "little doubt" that his codefendant was going to testify against him, and, in light of his codefendant's potential testimony, he indicated to his attorney that he did not want to "roll the dice" by going to trial. In addition, during his plea canvass, the petitioner indicated to the court that he "didn't want to take the risk of trial" precisely because he believed that the state had enough evidence to convict him.

On the basis of the foregoing, the habeas court reasonably concluded that the petitioner's decision to plead guilty arose primarily from his understanding that the testimony of his codefendant would result in his conviction if he went to trial. When coupled with his awareness that he would face the maximum sentence if convicted, the court properly found that it was not reasonably probable that the petitioner would have insisted on going to trial. We note, however, that under the *Strickland-Hill* modified prejudice standard, "[t]he fundamental question . . . is whether the petitioner would not have pleaded guilty." *Carraway* v. *Commissioner of Correction*, supra, 144 Conn. App. 477 (2013). Because none of counsels' alleged errors would have affected the reason for the petitioner's decision to plead guilty, namely, that his codefendant would testify against him if he went to trial, we conclude that the petitioner has failed to demonstrate that, absent counsels' alleged errors, there is a reasonable probability he would not have pleaded guilty and would have insisted on going to trial.

The judgment is affirmed.

[1] "A 'show-up' is the presentation of a single suspect to an eyewitness for possible identification." *State* v. *Ledbetter*, 275 Conn. 534, 549 n.12, 881 A.2d 290 (2005), cert. denied, 547 U.S. 1082, 126 S. Ct. 1798, 164 L. Ed. 2d 537

(2006). The "drive-by show-up" identification procedure employed in the present case involved the police transporting the witnesses to the scene of the stop to either identify the individuals as the assailants or eliminate them as suspects in the robberies.

[2] As a result of a previous conviction, the petitioner was on probation when he was arrested in March, 2006.

[3] At the time of the pretrial proceedings, the New London state attorney's office had an "open file policy."

[4] Pursuant to the plea agreement, the state dropped the remaining charges against the petitioner.

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[6] The habeas court rejected the petitioner's claim that his guilty pleas were "obtained in violation of his state and federal constitutional rights to due process of law." Notwithstanding the rejection of this claim, both the court and the record indicate that the petitioner withdrew his due process claim at the habeas trial. Whether the claim was withdrawn or rejected, the petitioner has not raised a due process claim on appeal.

[7] To demonstrate prejudice following a conviction after trial, "the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 688–89.

[8] We note that in *Copas* v. *Commissioner*, supra, 234 Conn. 151, our Supreme Court determined that, to establish prejudice, a petitioner who has entered a plea of guilty must show that he or she would not have pleaded guilty and would likely have been successful at trial. By contrast, in an appeal currently pending in our Supreme Court, both the petitioner and the respondent, the Commissioner of Correction, maintain that a petitioner must show only that, but for counsel's deficient performance, he or she would not have pleaded guilty and would have insisted on going to trial. See *Brown* v. *Commissioner of Correction*, Docket No. SC 18859.