******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TYRONE ROBINSON *v.* COMMISSIONER
OF CORRECTION
(AC 37385)

Beach, Keller and Harper, Js.

*Argued May 24—officially released August 30, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Kwak, J.)

*David B. Bachman*, assigned counsel, for the appellant (petitioner).

*Rocco A. Chiarenza*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Richard Keenan Greenalch, Jr.*, deputy assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Tyrone Robinson, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion when it denied his petition for certification to appeal and (2) improperly concluded that his criminal defense counsel (defense counsel), George Flores and William O'Connor,[1] did not provide ineffective assistance by failing to immediately object or move for a mistrial after a state's witness testified that the petitioner had refused to speak to police. We conclude that the court did not abuse its discretion in denying the petition for certification to appeal, and, accordingly, dismiss the appeal.

The following facts and procedural history are relevant to our resolution of the petitioner's claims.[2] In 2008, the petitioner was convicted of the murder of Leonard Lindsay in violation of General Statutes § 53a-54a and criminal possession of a firearm in violation of General States § 53a-217 (a) (1). The petitioner elected to have the first count tried by a jury and the second count tried by the court. *State* v. *Robinson*, 125 Conn. App. 484, 486, 8 A.3d 1120 (2010), cert. denied, 300 Conn. 911, 12 A.3d 1006 (2011). The core of the state's case consisted of testimony that the petitioner had confessed to killing the victim to four individuals on separate occasions between October, 2002, and April, 2008. Id., 487. The state also presented evidence that the petitioner had exhibited jealousy and anger toward the victim. Id., 486. The state did not produce a murder weapon, any eyewitnesses to the killing, or any physical forensic evidence connecting the petitioner to the killing.

The petitioner's criminal trial included testimony from the lead investigating officer, Detective Jerry Bilbo of the Hartford Police Department, which forms the basis of this appeal. Bilbo testified that the petitioner chose not to speak to police officers following his arrest:

"[The Prosecutor]: When [the petitioner] was arrested, were you called in to speak to him?

"[Bilbo]: Yes, I was.

"[The Prosecutor]: Alright. And did you go see him?

"[Bilbo]: Yes, I did.

"[The Prosecutor]: And did you speak to him?

"[Bilbo]: Yes, I did.

"[The Prosecutor]: Alright. And did he speak to you?

"[Bilbo]: He refused to speak to me."

Defense counsel did not move for a mistrial or other-

wise object immediately to this testimony. Rather, defense counsel chose to cross-examine Bilbo regarding the petitioner's silence and right to remain silent:

"[Defense Counsel]: You said that, when [the petitioner] was arrested, you went to speak to him.

"[Bilbo]: Yes, I did.

"[Defense Counsel]: And you're aware that he does not have to speak to you if he doesn't want to. Isn't that right?

"[Bilbo]: Yes.

* * *

"[Defense Counsel]: Okay. And you didn't write in any report or any documentation anywhere that you ever attempted to speak to [the petitioner], did you?

"[Bilbo]: He refused to speak to me.

* * *

"[Defense Counsel]: Okay. Now, you said . . . when [the petitioner] was arrested, you spoke to him. Correct?

"[Bilbo]: Yes, I did.

"[Defense Counsel]: Where did that occur?

"[Bilbo]: That occurred right here, at the courthouse.

"[Defense Counsel]. Okay. But you didn't document that anywhere.

"[Bilbo]: No, sir.

"[Defense Counsel]. And, at any rate, he has every right not to speak to you. Correct?

"[Bilbo]: Yes."

This line of cross-examination in turn prompted the prosecutor to have the following exchange with Bilbo on redirect:

"[The Prosecutor]: [Defense] Counsel also asked you about speaking to [the petitioner] after he was arrested. Correct?

"[Bilbo]: Yes, he did.

"[The Prosecutor]: And he said that you did not document anywhere that [the petitioner] chose not to talk to you. Correct?

"[Bilbo]: Correct.

"[The Prosecutor]: Alright. And, as [Defense Counsel] pointed out, that was his constitutional right to do so. Correct?

"[Bilbo]: Yes, it was.

"[The Prosecutor]: And is that unusual for you not to document that someone chooses not to speak to you?

"[Bilbo]: No, it is not."

Finally, defense counsel closed this topic on recross-examination of Bilbo as follows:

"[Defense Counsel]: Okay. And [if a witness stated an important detail to you during an interview] that would be documented, but speaking to a defendant would not be documented. Right? That's your testimony?

"[Bilbo]: Yes, sir."

Two days later, defense counsel made a motion for a mistrial on the ground that Bilbo's testimony regarding the petitioner's silence violated his due process rights under *Doyle* v. *Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and *State* v. *Plourde*, 208 Conn. 455, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989), and caused him substantial and irreparable prejudice. The court denied the motion on the basis that, rather than immediately make that motion when the testimony was offered, defense counsel chose to cross-examine Bilbo on the topic. The court described this decision by defense counsel as "a very sound and excellent tactical decision" and "very intelligent." Instead of granting a mistrial, the court gave a curative instruction to the jury and prohibited the prosecutor from making any arguments regarding the petitioner's silence.

The court provided the following curative instruction to the jury: "The [petitioner] also has a constitutional right not to speak to police. And if you find that the [petitioner] chose not to speak to Detective Bilbo, you may not hold that against him in any way." The petitioner was found guilty on both counts. *State* v. *Robinson*, supra, 125 Conn. App. 486. Following conviction, defense counsel filed a motion for a new trial arguing, in part, that Bilbo's testimony was a prejudicial violation of the petitioner's right against self-incrimination under the fifth amendment to the United States constitution. The court denied this motion from the bench on September 2, 2008, without any oral argument from the parties. The petitioner subsequently was sentenced to a total effective sentence of fifty years incarceration. Id. On direct appeal, this court affirmed the judgment of conviction.[3] Id., 489.

On May 18, 2012, the petitioner filed his operative petition for a writ of habeas corpus, in which he alleged that his defense counsel rendered ineffective assistance on several grounds,[4] including by failing to object or move for a mistrial immediately after Bilbo testified that the petitioner had refused to speak to police, and then further compounding the error by raising the issue on cross-examination. He contended this deficiency fell below the range of competence displayed by lawyers with ordinary training and skill, violated his due process rights, and caused him prejudice because, if not for this

failure, the outcome of his trial would have been different.

Following a trial, the habeas court denied the petition for a writ of habeas corpus by a memorandum of decision dated October 9, 2014. The habeas court made the following relevant findings. When Bilbo testified regarding the petitioner's silence, the defense team discussed how to respond. They determined that it was unlikely the court would grant a mistrial and that, even if such a ruling could be obtained, it would not serve their client's strong desire to proceed with trial. They concluded that the best response would be to cross-examine Bilbo on this issue and seek a curative jury instruction. This strategy also had the benefit, in their view, of undermining Bilbo's credibility and revealing his biases. The habeas court found this strategy to be "eminently reasonable and not indicative of deficient performance," and that it "effectively highlight[ed] [Bilbo's] bias." The court concluded that defense counsel did not provide ineffective assistance and that the petitioner did not show that this strategy caused him prejudice.

The petitioner then filed a petition for certification to appeal, which alleged several grounds for appeal, including whether the habeas court improperly determined that defense counsel's strategy regarding Bilbo's testimony did not constitute deficient performance. The court denied the petition for certification to appeal on October 16, 2014. This appeal followed.

In this appeal, the petitioner contends that the habeas court abused its discretion in denying his petition for certification to appeal and in determining that defense counsel did not provide ineffective assistance by failing to move for a mistrial immediately or otherwise object when Bilbo testified regarding the petitioner's silence. We disagree.

We begin by setting forth the applicable standard of review. "In *Simms* v. *Warden*, 229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encourage-

ment to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Atkins* v. *Commissioner of Correction*, 158 Conn. App. 669, 674–75, 120 A.3d 513, cert. denied, 319 Conn. 932, 125 A.3d 206 (2015).

Consideration of the merits of the petitioner's underlying claims requires us to set forth the standard of review for claims of ineffective assistance of counsel. "In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Emphasis in original; internal quotation marks omitted.) *Jones* v. *Commissioner of Correction*, 152 Conn. App. 110, 115, 96 A.3d 1271, cert. denied, 314 Conn. 931, 102 A.3d 83 (2014). "[T]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Atkins* v. *Commissioner of Correction*, supra, 158 Conn. App. 675.

The petitioner first claims that the habeas court incorrectly determined that defense counsel did not provide ineffective assistance. Specifically, he contends that he was denied his constitutional right to the effective assistance of counsel when his defense counsel did not properly respond to a violation of his due process rights. He argues that Bilbo's testimony regarding the petitioner's silence violated his constitutional rights as delineated in *Doyle* v. *Ohio*, supra, 426 U.S. 610, and *State* v. *Plourde*, supra, 208 Conn. 455, and as such, required a specific response from defense counsel: immediately either move for a mistrial or object.[5] The respondent, the Commissioner of Correction, argues that the habeas court correctly determined that defense counsel's perfor-

mance was not deficient. He contends that Bilbo's testimony does not constitute a violation under *Doyle* and *Plourde* because there is no evidence in the record that the petitioner received a *Miranda*[6] warning prior to invoking his right to remain silent, and that defense counsel therefore cannot have performed deficiently in failing to respond a particular way. The petitioner has conceded in his reply brief that "the case at bar involves postarrest, pre-*Miranda* silence . . . ." For the reasons that follow, we find this concession to be dispositive of the petitioner's claim that a *Doyle* violation occurred and required a specific response from his defense counsel. Therefore, we conclude that the habeas court correctly determined that defense counsel's performance was not deficient in regard to the alleged *Doyle* violation.

"In *Doyle* v. *Ohio*, supra, [426 U.S. 617–19],the United States Supreme Court held that the impeachment of a defendant through evidence of his silence following his arrest and receipt of *Miranda* warnings violates due process. The court based its holding in two considerations: First, it noted that silence in the wake of *Miranda* warnings is insolubly ambiguous and consequently of little probative value. Second and more important, it observed that while it is true that the *Miranda* warnings contain no express assurances that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. . . . The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. . . . Consistent with this rationale, the court has concluded that use at trial of silence prior to the receipt of *Miranda* warnings does not violate due process. . . . *Doyle* applies whenever *Miranda* warnings have been given regardless of an arrest or custody." (Citations omitted; internal quotation marks omitted.) *State* v. *Plourde*, supra, 208 Conn. 465–66. Our Supreme Court's decision in *Plourde* further expanded the *Doyle* rule to prohibit the state's use of evidence of a defendant's post-*Miranda* silence as affirmative proof of guilt at trial. Id., 468.

A claim of ineffective assistance of counsel based on an alleged *Doyle* violation is a claim that defense counsel should have done more to protect the defendant from a violation of the implicit promise of the *Miranda* warning not to use his silence against him. Therefore, evidence that a *Miranda* warning was given is a necessary prerequisite to the petitioner's claim. *State* v. *Berube*, 256 Conn. 742, 753, 775 A.2d 966 (2001). Because there is no dispute that the silence at issue here occurred prior to the issuance of a *Miranda* warn-

ing, there can be no *Doyle* violation. Id. We therefore conclude that the habeas court correctly determined that defense counsel did not render ineffective assistance in responding to a *Doyle* violation because none had occurred.

Despite the lack of a *Doyle* violation, it is possible that testimony regarding the petitioner's postarrest silence could be particularly prejudicial to his case, and the question therefore remains whether the performance of defense counsel fell below an objective standard of reasonableness in responding to Bilbo's testimony. The petitioner has argued that his defense counsel's response was deficient because counsel did not object or move for a mistrial immediately. Even assuming, arguendo, that Bilbo's testimony was so damaging as to have prompted some kind of mitigating response from a reasonably competent defense attorney, it remains unclear that the response advocated by the petitioner is the only correct response or that the response of defense counsel was in any way deficient.[7]

"The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause: In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense. . . . The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled. . . . That a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." (Citations omitted; internal quotation marks omitted.) *Strickland* v. *Washington*, 466 U.S. 668, 684–85, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's role is "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." Id., 687.

Moreover, "[t]he court must be mindful that [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the chal-

lenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction,* 89 Conn. App. 850, 855–56, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005).

This court's decision in *Lewis* v. *Commissioner of Correction,* supra, 89 Conn. App. 850, is instructive. In that case, this court considered a nearly identical set of factual circumstances and legal questions. The petitioner in *Lewis* argued that his attorney provided deficient performance in failing to move for a mistrial after a police officer testified that, during the investigation, he attempted to speak to the petitioner and he refused.[8] Id., 863. The police officer's testimony was that the petitioner initially had cooperated with police and confessed to a murder. Id. After the confession, police proceeded to discuss other matters with the petitioner during which time he provided a recorded statement regarding those other matters. Id. After making that unrelated recording, the police officer requested that the petitioner repeat his murder confession so that officers could also record that statement. At that point, the petitioner refused to speak to officers further and consequently the interrogation ceased. Id.

Rather than immediately move for a mistrial or object, defense counsel in *Lewis* chose to cross-examine the police officer on this issue and use it to help undermine the officer's credibility. Id., 865–68. In doing so, counsel necessarily brought the petitioner's silence to the attention of the jury again. Id. Neither this court's decision in *Lewis* nor the underlying habeas court's decision in *Lewis*[9] show that counsel moved for a mistrial, nor do these decisions reflect that defense counsel sought a curative instruction. Nevertheless, this court concluded that counsel's strategy constituted a reasonable tactical decision, guided by sound professional judgment. Id., 866.

We conclude that the habeas court correctly determined that the performance of defense counsel did not fall below an objective standard of reasonableness. As in *Lewis,* defense counsel in the present case did not immediately move for a mistrial or object to testimony regarding postarrest silence. A mistrial is considered an extreme remedy and is disfavored where the harm can be mitigated through other means. *State* v. *Gary,* 273 Conn. 393, 413, 869 A.2d 1236 (2005). In both cases, the attorneys elected to use the issue of postarrest silence on cross-examination of the witness to undermine that witness' credibility and stress that the petitioner has a constitutional right not to speak to the police. This court previously has held that "[a]n attorney's line of questioning on examination of a witness clearly is tactical in nature"; (internal quotation marks omitted) *Velasco* v. *Commissioner of Correction,* 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010); and "a court must

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, supra, 89 Conn. App. 855–56. In both *Lewis* and the present case, the witness that raised the petitioner's postarrest silence was the lead police investigator. A trial strategy that undermines the credibility of the lead investigator by implication takes aim at the value of the investigation itself. This strategy tests the state's case and helps "to ensure that the adversarial testing process works to produce a just result under the standards governing decision." *Strickland* v. *Washington*, supra, 466 U.S. 687. The strategy adopted by the defense counsel in the present case was substantially similar to the strategy we determined to be reasonable in *Lewis* under similar circumstances. We see no reason to reject it now.

Our conclusion is further buttressed by other facts that distinguish the petitioner's case from *Lewis*. Unlike in *Lewis*, here defense counsel did more than simply cross-examine the witness. Defense counsel sought a mistrial, albeit with some delay, and moved for a new trial after conviction. Both motions cited Bilbo's references to the petitioner's postarrest silence. Although the court did not provide its rationale for denying the motion for a new trial, it did explain that it was denying the motion for a mistrial, in part, because the cross-examination by defense counsel had adequately mitigated any potential prejudice. These motions led the court to prohibit the prosecutor from making any further comment or arguments based on the petitioner's silence.[10] Finally, defense counsel sought and obtained a curative jury instruction directing the jury to draw no adverse inferences from the petitioner's silence because he was merely exercising his constitutional right not to speak to the police.[11]

The petitioner has not met his burden of demonstrating that this issue is debatable among jurists of reason or that a court could resolve this issue in a different manner. We agree with the habeas court's determination that this performance did not fall below an objective level of reasonableness. We need not reach the question of whether the petitioner suffered prejudice because the failure to prove either prong of the *Strickland* standard is determinative of the petitioner's ineffective assistance of counsel claim. *Jones* v. *Commissioner of Correction*, supra, 152 Conn. App. 115. We conclude that the petitioner failed to satisfy his burden of proof with respect to his claim of ineffective assistance of counsel. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judge concurred.

[1] The petitioner's defense team consisted of two attorneys. Attorney Flores was the lead attorney and he was responsible for the witness examination at issue in this matter. Attorney O'Connor was assistant counsel and helped formulate the defense strategy. Most of the defense activities discussed herein were the actions of Attorney Flores; however, Attorney O'Connor also participated in some motions relevant to this matter. For the purposes of this appeal, it is not relevant which attorney posed a particular question or made a motion, therefore we will refer to the petitioner's criminal defense team as defense counsel and will not differentiate between his attorneys.

[2] This court's opinion in the petitioner's direct appeal provides a full exposition of the facts that the jury reasonably could have found at the criminal trial. See *State* v. *Robinson*, 125 Conn. App. 484, 486–87, 8 A.3d 1120 (2010), cert. denied, 300 Conn. 911, 12 A.3d 1006 (2011). Much of this information is not relevant to the narrow issues before the court here.

[3] The claims on direct appeal were unrelated to those currently before us.

[4] The other grounds raised by the petitioner in his operative petition for a writ of habeas corpus are not relevant to this appeal.

[5] The petitioner has shifted his argument before this court. The shift is most apparent in his reply brief, in which he reframes the issue as a violation of his right against self-incrimination under the fifth amendment to the United States constitution, with citations to *Griffin* v. *California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). The petitioner's arguments to the habeas court were exclusively based on an alleged *Doyle* violation with citations to *Doyle*, *Plourde*, and their progeny. "[T]he *Doyle* analysis rests on the Due Process Clause [of the fourteenth amendment], not the Fifth Amendment." *Wainwright* v. *Greenfield*, 474 U.S. 284, 293 n.10, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986). The court in *Doyle* held that the state violates the fundamental fairness guaranteed by the due process clause of the fourteenth amendment when it uses a defendant's post-*Miranda* silence as evidence against him in a criminal trial after having implicitly promised, through the *Miranda* warning, not to use that silence against him. *State* v. *Plourde*, supra, 208 Conn. 465–66. This is the argument the petitioner presented to the habeas court in his ineffective assistance claim. He claimed that his defense counsel had performed deficiently because they had failed to prevent the state from violating the petitioner's due process rights by breaching this implied promise of the *Miranda* warning. Because the task before this court is to determine whether the habeas court abused its discretion in denying certification to appeal, we will consider only the grounds the petitioner actually presented to the habeas court. See *Tutson* v. *Commissioner of Correction*, 144 Conn. App. 203, 217, 72 A.3d 1162, cert. denied, 310 Conn. 928, 78 A.3d 145 (2013) ("[u]nder such circumstances, a review of the petitioner's claims would amount to an ambuscade of the [habeas] judge" [internal quotation marks omitted]).

[6] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[7] We must also note that the case law is not clear that a *Doyle* violation categorically requires a mistrial. Even had a *Doyle* violation occurred, that finding would not necessitate the response that the petitioner advocates. See, e.g., *State* v. *Montgomery*, 254 Conn. 694, 718, 759 A.2d 995 (2000) (explaining that some *Doyle* violations are so insignificant as to be deemed harmless error while others are more significant). In particular, the petitioner argues the appropriate response to a *Doyle* violation is a mistrial, but the case law is clear that a mistrial is considered to be an extreme remedy that can be granted only if there is no other way to mitigate some improper harm caused to the defendant. See *State* v. *Gary*, 273 Conn. 393, 413, 869 A.2d 1236 (2005) (mistrial is drastic and disfavored remedy that should not be granted if other curative action can obviate any prejudice suffered). Given that not all *Doyle* violations are significant, it is incorrect to assume that all *Doyle* violations require a mistrial.

[8] The testimony regarding silence in *Lewis* is distinguishable from that in the present case in one particularly noteworthy aspect. In *Lewis*, there was no dispute that the police officer was testifying about the petitioner's post-*Miranda* silence rather than merely postarrest silence, which means that *Doyle* squarely applied to those claims. *Lewis* v. *Commissioner of Correction*, supra, 89 Conn. App. 863.

[9] *Lewis* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-93-0001767-S (November 15, 1999).

[10] This instruction by the criminal trial court is particularly noteworthy as our Supreme Court previously has held that reference to a defendant's silence is most damaging when it is repetitively emphasized with extensive, strongly worded arguments suggesting a connection between silence and guilt. *State* v. *Montgomery*, supra, 254 Conn. 718.

[11] We note that the petitioner also contends that Attorney O'Connor disagreed with the trial strategy and that this disagreement indicates a deficiency in the performance of his defense counsel. We reject this contention. To begin with, our review of the record indicates that Attorney O'Connor's testimony may be more accurately characterized as stating that, with the benefit of hindsight, he now sees the situation differently and views the relative benefits of alternative trial strategies differently than he did at the time of trial. This does not indicate that Attorney O'Connor disagreed with the trial strategy at the time, and, even if he did, disagreement among defense counsel does not in itself render the strategy ultimately chosen to be unreasonable. Additionally, the import of Attorney O'Connor's testimony must be tempered by the Supreme Court's instruction that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* v. *Washington*, supra, 466 U.S. 689.