******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SOMEN SHIPMAN *v.* COMMISSIONER
OF CORRECTION
(AC 38774)

Alvord, Sheldon and Gruendel, Js.

*Argued November 30, 2016—officially released April 25, 2017*

(Appeal from Superior Court, judicial district of
Tolland, Oliver, J.)

*Michael W. Brown*, assigned counsel, for the appellant (petitioner).

*C. Robert Satti, Jr.*, supervisory assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Craig P. Nowak*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. Following a grant of certification to appeal, the petitioner, Somen Shipman, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred by finding that his right to the effective assistance of counsel was not violated. Specifically, the petitioner claims that the court improperly found that his constitutional right to the effective assistance of counsel was not violated by his trial counsel's failure (1) to adequately raise a *Batson*[1] challenge, and (2) to present the testimony of two alibi witnesses. We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history, as set forth by this court on direct appeal, are relevant to this appeal. "In October, 1996, Torrance McClain, Norman Gaines and the [petitioner] were entrenched in Bridgeport's drug trade. Sometime in mid-October, Ronald Marcellus, another drug dealer and an associate of McClain, Gaines and the [petitioner], engaged with Gary Louis-Jeune in an angry verbal exchange over their respective drug dealing enterprises. Following this exchange, Marcellus requested that the [petitioner] take care of [the situation] for him because Louis-Jeune was attempting to move in on the block. The [petitioner] and Gaines, on the evening of October 29, 1996, thereafter shot Louis-Jeune and his girlfriend, Marsha Larose, multiple times, killing both of them.

"In December, 1996, McClain was arrested and pleaded guilty to drug charges. Before he was sentenced pursuant to his guilty plea, McClain provided the Bridgeport police with a written statement indicating that Gaines and the [petitioner] were responsible for the shooting of Louis-Jeune and Larose. The [petitioner] subsequently was arrested and charged with one count of capital felony, two counts of murder and one count of conspiracy to commit murder. After a trial, the jury returned a verdict of guilty on all charges, and the court, on April 28, 2000, rendered judgment in accordance with the verdict. Merging the two counts of murder with the capital felony charge, the court sentenced the [petitioner] to life imprisonment without the possibility of release, to run concurrently with twenty years imprisonment on the charge of conspiracy to commit murder, for a total effective sentence of life imprisonment without the possibility of release.

"In June, 2000, the [petitioner] appealed his conviction directly to the Supreme Court, following which he moved for rectification of the trial court record to establish the races of the jury venirepersons. The trial court denied his motion and, thereafter, the [petitioner] moved for review by the Supreme Court. On March 16, 2004, the Supreme Court granted the motion and the

relief requested therein. On November 17, 2011, the state moved for reconsideration of the Supreme Court's granting of the [petitioner's] motion for rectification of the record. The Supreme Court granted both the state's motion and the relief requested therein, stating: Upon careful review of the record, it is apparent that the [petitioner] failed to raise a disparate treatment claim in the trial court and, therefore, is not entitled to rectification of the record to augment [it] with evidence to support such a claim. See, e.g., *State* v. *Hodge*, 248 Conn. 207, 227 [726 A.2d 531] (when the defendant [fails] to raise a disparate treatment claim with respect to [specific] venirepersons, the record is inadequate for appellate review of his claims with respect to those venirepersons), cert. denied, 528 U.S. 969 [120 S. Ct. 409, 145 L. Ed. 2d 319] (1999); *State* v. *Haughley*, 124 Conn. App. 58, 61 n.3 [3 A.3d 980] (same) [cert. denied, 299 Conn. 912, 10 A.3d 529 (2010)]. Thereafter, pursuant to Practice Book § 65-1, the Supreme Court transferred the [petitioner's] appeal to this court." (Footnote omitted; internal quotation marks omitted.) *State* v. *Shipman*, 142 Conn. App. 161, 163–65, 64 A.3d 338, cert. denied, 309 Conn. 918, 70 A.3d 41 (2013). This court affirmed the petitioner's conviction. Id., 177.

On May 27, 2014, the petitioner filed his amended petition for a writ of habeas corpus. The petitioner alleged, inter alia, that his federal and state constitutional rights to due process, conflict-free representation, and the effective assistance of counsel were violated. Specifically, the petitioner claimed that the state failed to disclose material evidence favorable to his defense, pursuant to *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and that the state knowingly presented false testimony at his trial. Additionally, the petitioner claimed that his trial counsel was burdened by an actual conflict of interest that adversely affected counsel's performance, his trial counsel's performance was deficient during jury selection and the criminal trial, and that the petitioner was prejudiced thereby.

On December 14, 2015, the habeas court denied the petitioner's habeas petition. On December 23, 2015, the court granted his petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

We begin our analysis with the law governing the petitioner's claim as well as our standard of review. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 686–87, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], [our Supreme Court]

has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Spearman* v. *Commissioner of Correction*, 164 Conn. App. 530, 538, 138 A.3d 378, cert. denied, 321 Conn. 923, 138 A.2d 284 (2016).

"[According to] *Strickland*, [an ineffective assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original; internal quotation marks omitted.) *Hall* v. *Commissioner of Correction*, 124 Conn. App. 778, 782–83, 6 A.3d 827 (2010), cert. denied, 299 Conn. 928, 12 A.3d 571 (2011).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Citation omitted; internal quotation marks omitted.) *Bharrat* v. *Commissioner of Correction*, 167 Conn. App. 158, 167–68, 143 A.3d 1106, cert. denied, 323 Conn. 924, 149 A.3d 982 (2016). With respect to the prejudice prong, the petitioner must establish that if he had received "effective representation by . . . counsel," there is "a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Emphasis omitted; internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 117, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011).

It is well settled that in reviewing the denial of a habeas petition alleging ineffective assistance of counsel, "[t]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by

the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction*, 167 Conn. App. 809, 817, 144 A.3d 493, cert. denied, 323 Conn. 925, 149 A.3d 982 (2016). "In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Delvecchio* v. *Commissioner of Correction*, 149 Conn. App. 494, 500, 88 A.3d 610, cert. denied, 312 Conn. 904, 91 A.3d 906 (2014).

In the present case, the habeas court determined that trial counsel's failure to properly raise a *Batson* claim did not prejudice the petitioner. Additionally, the court found that counsel's representation of the petitioner was not deficient with respect to counsel's decision not to call two alibi witnesses to testify on behalf of the petitioner, and accordingly, the petitioner was not prejudiced by his counsel's performance.

I

On appeal, the petitioner first claims that the habeas court erred in determining that he was not prejudiced by his counsel's failure to properly raise a *Batson* challenge.[2] Specifically, the petitioner asserts that he was prejudiced by his attorney's failure (1) to properly raise a *Batson* claim when the prosecuting authority exercised a peremptory challenge of venireperson T.G.[3] (2) to understand the law as it related to *Batson* claims, (3) to perform a comparative juror analysis and raise a disparate treatment claim under *Batson*, (4) to renew the *Batson* challenge before the jury was sworn and (5) to make an adequate record for appeal during the *Batson* hearing. In addition, the petitioner argues that the habeas court erred by determining the issue of prejudice on the basis of whether there was a reasonable probability that, but for his attorney's alleged deficient performance, the outcome of his criminal trial would have been different. Instead, the petitioner argues, the court should have analyzed whether there was a reasonable probability that the outcome of the *Batson* hearing would have been different, either at the trial level or on appeal.

The following additional facts are relevant to our resolution of this claim. Jury selection for the petitioner's criminal trial commenced on January 12, 2000. While being questioned by the state, a white venireperson, L.W., revealed that she had knowledge of one of the areas relevant to the petitioner's case because she drove by the area regularly for work. L.W. also stated that she had a close friend who was a Norwalk police officer and a former Bridgeport police officer. Another white venireperson, J.A., was accepted by the state after he admitted his familiarity with both areas relevant to the case and that he knew police officers

or retired police officers.

During jury selection on February 2, 2000, the state questioned an African-American venireperson named T.G. Through the state's questioning, T.G. revealed that he went to one of the areas relevant to the crime "[a]t least two times a week." In response to the state's question as to whether T.G. knew anything about handguns, T.G. disclosed that his father had been a police officer in Florida, had worked on a drug task force for about five years, and that his father had discussed his work with the family "[o]ff and on." When the state exercised one of its peremptory challenges to excuse T.G., defense counsel objected and asked the state to articulate its reasons on the record pursuant to *Batson*.

The state explained that it had challenged T.G. because of his "knowledge of the area . . . of the homicide where he indicated he would go through at least two or three times . . . a week . . . ." The state also noted that T.G.'s father was "working as a police officer" on "a drug task force" and that the state expected there to be evidence of drug dealing throughout the trial. "[T]he overall picture," the state asserted, prompted concern about what T.G. might "bring by way of knowledge of people and the like."

In response to the state's articulation, defense counsel argued that "[w]e've had precious few minorities, particularly blacks . . . on the voir dire panel who were able to serve" and that "this twenty-four year old black man, [T.G.] . . . didn't give any response that would indicate any cause for concern . . . ." Relying on its stated reasons, the state insisted that it had not been "routinely excluding black individuals" and that "there is no pattern of strikes." The court considered the questioning of T.G. and noted that it had detected "a certain reticence on the part of the venireperson in terms of the state's attorney exploring his knowledge of the area in question." The court ultimately concluded that, "given the totality of circumstances and based upon the history of the questioning of the . . . venirepersons here, I think that the state's attorney has given . . . sufficient race neutral reason[s] for excuse . . . ." Had T.G. been accepted to the jury panel, he would have been the first alternate juror.

Following T.G.'s excusal, the petitioner's counsel made no requests to add information regarding the races of any other selected or excused jurors, and, accordingly, the record for appeal does not indicate the races of any of the jurors except for T.G. and one other juror who was excused by the court after presenting a hardship excuse. Counsel made no such request until after the jury had returned its guilty verdict and he initiated the direct appeal to the Supreme Court.

We begin by setting forth the well established principles of law that govern *Batson* claims. "Peremptory

challenges are deeply rooted in our nation's jurisprudence and serve as one state-created means to the constitutional end of an impartial jury and a fair trial. . . . Although such challenges generally may be based on subjective as well as objective criteria . . . they may not be used to exclude a prospective juror because of his or her race or gender. . . .

"In *Batson* . . . the United States Supreme Court recognized that a claim of purposeful racial discrimination on the part of the prosecution in selecting a jury raises constitutional questions of the utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . The court concluded that [a]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his [or her] view concerning the outcome of the case to be tried . . . the [e]qual [p]rotection [c]lause forbids the prosecutor to challenge potential jurors solely on account of their race. . . .

"Under Connecticut law, [o]nce a party asserts a *Batson* claim, the [opposing party] must advance a neutral explanation for the venireperson's removal. . . . The [party asserting the *Batson* claim] is then afforded the opportunity to demonstrate that the [opposing party's] articulated reasons are insufficient or pretextual. . . . [T]he trial court then [has] the duty to determine if the [party asserting the *Batson* claim] has established purposeful discrimination. . . . The [party asserting the *Batson* claim] carries the ultimate burden of persuading the trial court, by a preponderance of the evidence, that the jury selection process in his or her particular case was tainted by purposeful discrimination. . . .

"We have identified several specific factors that may indicate that [a party's removal] of a venireperson through a peremptory challenge was . . . motivated [by race or gender]. These include, but are not limited to: (1) [t]he reasons given for the challenge were not related to the trial of the case . . . (2) the [party exercising the peremptory strike] failed to question the challenged juror or only questioned him or her in a perfunctory manner . . . (3) prospective jurors of one race [or gender] were asked a question to elicit a particular response that was not asked of the other jurors . . . (4) persons with the same or similar characteristics but not the same race . . . as the challenged juror were not struck . . . (5) the [party exercising the peremptory strike] advanced an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically . . . (6) the [party exercising the peremptory strike] used a disproportionate number of peremptory challenges to exclude members of one race . . . .

"In assessing the reasons proffered in support of the

use of a peremptory challenge . . . [a]n explanation . . . need not . . . be pigeon-holed as wholly acceptable or wholly unacceptable . . . and even where the acceptability of a particular explanation is doubtful, the inquiry is not at an end. In deciding the ultimate issue of discriminatory intent, the judicial officer is entitled to assess each explanation in light of all the other evidence relevant to prosecutorial intent. The officer may think a dubious explanation undermines the bona fides of other explanations or may think that the sound explanations dispel the doubts raised by a questionable one. As with most inquiries into state of mind, the ultimate determination depends on an aggregate assessment of all the circumstances. . . .

"Finally, the trial court's decision on the question of discriminatory intent represents a finding of fact that will necessarily turn on the court's evaluation of the demeanor and credibility of the attorney of the party exercising the peremptory challenge. . . . Accordingly, a trial court's determination that there has or has not been intentional discrimination is afforded great deference and will not be disturbed unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *State* v. *Dehaney*, 261 Conn. 336, 343–46, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003).

In the present case, we agree with the habeas court that the petitioner has failed to demonstrate that he suffered prejudice as a result of his attorney's alleged failure to properly assert a *Batson* challenge. Even if the petitioner's trial counsel had requested additional information on the race of the jurors for the record on appeal, the record was still devoid of any indication that the prosecuting attorney had acted intentionally to exclude venireperson T.G. on the basis of his race. T.G. was distinguishable from other nonexcluded jurors in that (1) he was intimately familiar with one of the areas of the crime, and (2) his father was a police officer who had worked on a drug task force. Although other nonexcluded jurors mentioned some level of familiarity with one of the areas of the crime, their familiarity did not rise to the level of that admitted to by T.G. Likewise, although some jurors knew or were acquainted with police officers, no other jurors had close relatives who were police officers, and no other jurors knew police officers who had worked on drug task forces.

After a careful review of the arguments and record presented to this court, we conclude that the petitioner has not demonstrated that T.G. was intentionally excluded on the basis of his race, and, therefore, that

the petitioner is unable to demonstrate that, had his trial counsel properly asserted the *Batson* challenge, it is reasonably probable that the outcome of his trial or appeal would have been different. Because we determine that the petitioner's *Batson* challenge would have failed regardless of his attorney's performance, there is no need for us to decide today whether the habeas court properly determined the issue of prejudice on the basis of the outcome of the petitioner's trial, as opposed to the outcome of the *Batson* hearing, because the analysis would be identical. Accordingly, the petitioner's first claim fails.

## II

The petitioner next claims that the court erred in determining that his counsel did not render ineffective assistance in failing to present alibi witness testimony from two potential witnesses. Specifically, the petitioner argues that the habeas court erred by failing, under the doctrine of collateral estoppel, to adopt the factual findings made by another habeas court[4] in regard to the testimony of Madeline Rivera and Luz Davila. We disagree.

The following additional facts are relevant to the petitioner's claim. During the habeas trial, the petitioner presented testimony from himself, Rivera, and Davila. The petitioner's trial counsel also provided testimony. The petitioner testified that Rivera, his then girlfriend, wrote to him after his arrest and told him that he had been helping her move at the time that the crimes occurred. Thereafter, the petitioner testified, he gave the names of Rivera and Davila to his habeas attorney. Although called to testify, Rivera and Davila invoked their fifth amendment privilege against self-incrimination and did not provide testimony at the habeas trial. The court, however, admitted prior testimony given by Rivera and Davila in *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 51 A.3d 948 (2012), regarding the petitioner's alibi. Rivera and Davila testified in *Gaines* that the petitioner was in the process of helping Rivera move at the time of the crimes. The petitioner's trial counsel testified that he had never heard of the names of Davila or Rivera prior to the date of the habeas trial.

The habeas court determined that the doctrine of collateral estoppel did not apply to bar the court from making factual findings relevant to the testimony of Rivera and Davila. The court found "the argument unavailing, as [the] trial court [in *Gaines*] never assessed the competence of the legal representation of underlying counsel in *this* matter. Nor did that court assess the credibility of the several witnesses surrounding the alibi issue presented in the course of the instant trial, including the petitioner." (Emphasis in original.) The court concluded that the issue of the petitioner's trial counsel's competence had not been

fully and fairly litigated in the *Gaines* matter, and that accordingly, the doctrine of collateral estoppel did not apply.

After disposing of the issue of collateral estoppel, the court went on to evaluate the merits of the petitioner's underlying ineffective assistance claim. The court credited the testimony of the petitioner's trial counsel regarding the fact that the petitioner had never provided him with the names of Rivera or Davila and that the petitioner had never discussed the possibility of an alibi defense. The court discredited the testimony of the petitioner, and noted that his testimony regarding the fact that "he had to be told by a third party of his own alibi for the night of the killings" was particularly unconvincing.[5] For those reasons, the court concluded that the petitioner's trial attorney was not ineffective for failing to present Rivera and Davila as alibi witnesses at the petitioner's criminal trial.

On appeal, the petitioner argues that the habeas court erred by finding that the doctrine of collateral estoppel did not apply to bar the court from making its own findings regarding the testimony of Rivera and Davila from the *Gaines* habeas trial. "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *State* v. *Thomas*, 137 Conn. App. 782, 792, 49 A.3d 1038, cert. denied, 307 Conn. 923, 55 A.3d 566 (2012). "[T]he issue concerning which relitigation is sought to be estopped must be *identical* to the issue decided in the prior proceeding." (Emphasis added; internal quotation marks omitted.) *State* v. *Joyner*, 255 Conn. 477, 490, 774 A.2d 927 (2001).

In the present case, the petitioner argues that the issue of the credibility of Rivera and Davila had been fully and fairly litigated in the *Gaines* case, and that the court erred by making its own determination to discredit their testimony. The petitioner's argument is without merit, however, because the court was entitled to weigh all of the evidence before arriving at its determination. The doctrine of collateral estoppel could not apply to the issue of the credibility of Rivera and Davila, because that issue had not been fully and fairly litigated in relation to the petitioner's habeas trial. Moreover, the credibility of the two witnesses' testimony regarding the *petitioner's* whereabouts on the night of the shootings was not necessary to the *Gaines* decision, and the pertinent issue in the present case, which was whether the petitioner's trial attorney rendered ineffective assistance for failing to present these two witnesses, was never even addressed. Accordingly, we conclude that

the court did not err in declining to invoke the doctrine of collateral estoppel and that the petition for a writ of habeas corpus was properly denied.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[2] We observe that the petitioner challenges both the habeas court's finding that he was not prejudiced by his counsel's performance, as well as the court's finding that counsel did not perform deficiently in regard to his failure to properly raise a *Batson* challenge. Our review of the habeas court's memorandum of decision, however, reveals that the court did not reach the performance prong of the *Strickland* inquiry and decided the issue on the basis of prejudice. Accordingly, we limit our review to whether the habeas court properly found that counsel's performance prejudiced the petitioner. Because we agree that the petitioner has not demonstrated prejudice, it is unnecessary to assess his counsel's performance under the first prong of the *Strickland* inquiry.

[3] To protect the legitimate privacy interests of the venirepersons involved in this case, we refer to them by their initials. See, e.g., *State* v. *Wright*, 86 Conn. App. 86, 88 n.3, 860 A.2d 278 (2004).

[4] See *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 51 A.3d 948 (2012). Norman Gaines was the petitioner's codefendant in the underlying criminal trial.

[5] The petitioner also argues that the court erred in determining that the testimony presented at the petitioner's habeas trial regarding his alibi defense was not credible. This argument is unavailing. "[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Fine* v. *Commissioner of Correction*, 163 Conn. App. 77, 82–83, 134 A.3d 682, cert. denied, 320 Conn. 925, 133 A.3d 879 (2016).