******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

GERALD W.* *v.* COMMISSIONER
OF CORRECTION
(AC 37576)

DiPentima, C. J., and Keller and Prescott, Js.

*Argued September 16—officially released November 29, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Sferrazza, J.)

*James E. Mortimer*, with whom, on the brief, was
*Michael D. Day*, for the appellant (petitioner)

*Linda F. Currie-Zeffiro*, assistant state's attorney,
with whom, on the brief, were *John C. Smriga*, state's

attorney, *Craig P. Nowak*, senior assistant state's attorney, and *Susann E. Gill*, former supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Gerald W., appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the habeas court improperly rejected his claim that he received ineffective assistance from his prior habeas counsel. We affirm the judgment of the habeas court.

The record reveals the following relevant facts and procedural history. The petitioner was convicted following a jury trial of three counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), and one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (2). The relevant facts underlying the judgment of conviction were set forth in this court's opinion affirming that judgment. "From the evidence adduced at trial, the jury reasonably could have found the following facts. The victims are three minor children, S, the [petitioner's] daughter; P, the [petitioner's] cousin; and T, the cousin of the [petitioner's] girlfriend. At the time of trial, the three victims were age fourteen, fifteen and sixteen, respectively. The victims often would visit the [petitioner] at his apartment, where he lived with his girlfriend. When S was approximately six years old, she began visiting the [petitioner] on a weekly basis. Sometime in December, 2001, when she was eleven years old, the [petitioner] engaged in what would become a pattern of sexual abuse of S, which continued until sometime in early 2003. During some of these visits, the [petitioner] would touch her chest and vaginal area with his penis, finger or hand. On one evening during 2001, when P was eleven, the [petitioner] pulled down her pants and attempted to engage in sexual intercourse. When T was nine years old, she began to visit the [petitioner] and her cousin. During the ensuing five year period, the [petitioner] inappropriately touched both her chest and vaginal area approximately ten times.

"After the [petitioner's] conduct was disclosed to the police, the [petitioner] was arrested and charged in a substitute information dated May 5, 2005, with three counts of risk of injury to a child and one count of attempt to commit sexual assault in the first degree. Following a jury trial, the [petitioner] was convicted on all counts and sentenced to a total effective term of forty years imprisonment." *State* v. *Gerald W.*, 103 Conn. App. 784, 786–87, 931 A.2d 383, cert. denied, 284 Conn. 933, 935 A.2d 152 (2007).

As previously indicated, the petitioner appealed from the judgment of conviction. He claimed on appeal that the trial court improperly had instructed the jury regarding the presumption of innocence and had construed the rape shield statute improperly in excluding evidence

of T's allegations of prior sexual abuse by her biological father. Id., 786. This court affirmed the judgment of the trial court on September 18, 2007, and our Supreme Court later denied certification to appeal. Id.

In April, 2007, the petitioner filed his first petition for a writ of habeas corpus. Throughout that first habeas action, the petitioner was represented by Attorney Jodi Zils Gagne. He alleged in his first petition that his trial counsel, Jonathan Demirjian, had provided ineffective assistance in a number of ways. In particular, the operative petition provided that Demirjian was ineffective because he had failed (1) to move for separate trials as to each of the three victims; (2) to compel the prosecutor to specify the precise dates of the offenses; (3) to investigate alibi witnesses adequately; (4) to advise the petitioner about the maximum jail time he faced if unsuccessful at trial; (5) to submit into evidence video-taped forensic interviews of the victims; (6) to explain to the petitioner the state's evidence against him; (7) to prevent the admission of improper evidence offered by the state, including evidence of uncharged misconduct; (8) to subpoena testimony from the Department of Children and Families (department) about its investigation; and (9) to correct allegedly confusing information provided to the jury regarding the existence of a police report. Zils Gagne eventually withdrew the specifications of ineffective assistance that related to the videotaped interviews of the victims and to Demirjian's failure to call witnesses about the department's investigation. Following a trial, the habeas court denied the first petition and subsequently denied a petition for certification to appeal. The petitioner appealed from the habeas court's decision. This court dismissed the appeal by a memorandum decision dated January 24, 2012, and our Supreme Court subsequently denied certification to appeal. *Gerald W.* v. *Commissioner of Correction*, 133 Conn. App. 901, 33 A.3d 898, cert. denied, 304 Conn. 901, 38 A.3d 113 (2012).

On February 21, 2012, the petitioner filed a second habeas petition—the petition underlying the present appeal. An amended petition was filed on April 1, 2014, and contained two counts. The first count reasserted that trial counsel had provided ineffective assistance. Although the petitioner acknowledged in the petition that he previously had raised this claim in his first habeas petition, he asserted that he had not received a full and fair hearing of the claim. The petitioner listed thirteen specifications of ineffective assistance by trial counsel, the majority of which were not raised in the first habeas petition.[2]

The second count of the petition asserted that the petitioner received ineffective assistance from his prior habeas counsel, Zils Gagne. The sole ground alleged in the count was that Zils Gagne's "performance was deficient because she failed to adequately raise the

[specifications of ineffective assistance of trial counsel] identified in [count] one of this amended petition for a writ of habeas corpus.''

In his response to the habeas petition, the respondent, the Commissioner of Correction, pleaded by way of a special defense that the first count directed at trial counsel's performance had been raised previously and unsuccessfully litigated in the petitioner's first habeas action, and, therefore, it was barred by the doctrines of successive petition, res judicata and/or collateral estoppel.

The habeas court, *Sferrazza, J.*, conducted a trial on the second habeas petition over four days in August and September, 2014. The petitioner presented testimony from a number of witnesses including Demirjian, Zils Gagne, and Michael Blanchard, a criminal defense attorney with experience in child sexual abuse cases. At the close of evidence, the habeas court, with the consent of counsel, dismissed the first count of the petition, noting on the record that it was "really just part of the proof of the second count," and that "there was already a habeas [court judgment] which addressed trial counsel." The parties each submitted posttrial briefs. On December 15, 2014, the court issued a memorandum of decision denying the remainder of the habeas petition.

The court first noted that although the petitioner had presented expert testimony from Blanchard in support of his claim that prior habeas counsel was ineffective, Blanchard testified extensively only about the performance of trial counsel, and "expressed no opinion concerning habeas counsel's performance in the first habeas action. Nor did he voice any opinion regarding whether the purported deficiencies of [trial counsel] affected the outcome of the earlier habeas case or the criminal trial. In short, the petitioner produced no expert witness who maintained that [habeas counsel] rendered unprofessional legal assistance for the first habeas trial nor as to the prejudice prong of the *Strickland* standard with respect to either level of litigation." (Emphasis omitted.) See *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (establishing standard that to prevail on claim of ineffective assistance of counsel, petitioner bears burden of establishing both that counsel's performance was deficient and that petitioner suffered actual prejudice as result of that performance).

The court next proceeded to evaluate whether the petitioner had satisfied his burden of demonstrating that Zils Gagne's decision not to raise the specifications of deficient performance by trial counsel as set forth in the second habeas petition amounted to ineffective assistance. The court rejected the arguments offered by the petitioner. In particular, the court found that Zils Gagne was "an experienced criminal defense attorney,"

and that she had prepared by reviewing the criminal file, the trial transcripts, and the evidence admitted at trial, and by discussing with the petitioner his complaints about trial counsel. She reviewed the forensic interviews of the victims several times, including once with the petitioner present. She sought to establish whether there may have been alternative, innocent explanations for the actions of the petitioner toward the victims, although the petitioner either denied the acts outright or claimed that he could not remember because he consumed alcohol during the time period when the assaults occurred. The court further found that Zils Gagne pursued seven specifications of ineffective assistance of trial counsel in the first habeas petition and indicated that she strategically and reasonably had chosen not to pursue several claims that she believed would have been unsuccessful.

Ultimately, the habeas court concluded: "[T]he petitioner has failed to satisfy his burden of proving, by a preponderance of the evidence, any allegation of ineffective assistance on the part of Attorney Zils Gagne under the *Strickland* standard." The habeas court denied the petition but later granted the petition for certification to appeal. This appeal followed.

We begin our analysis with the law governing the petitioner's claim as well as our standard of review. "The use of a habeas petition to raise an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992). In *Lozada*, the court determined that the statutory right to habeas counsel for indigent petitioners provided in General Statutes § 51–296 (a) includes an implied requirement that such counsel be effective, and it held that the appropriate vehicle to challenge the effectiveness of habeas counsel is through a habeas petition." (Footnote omitted; internal quotation marks omitted.) *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 684, 686–87, 14 A.3d 343, cert. denied, 301 Conn. 901, 17 A.2d 1045 (2011). In *Lozada*, the court explained that "[t]o succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective." *Lozada* v. *Warden*, supra, 223 Conn. 842. As to each of those inquiries, the petitioner is required to satisfy the familiar two-prong test set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687. "First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Lozada* v. *Warden*, supra, 223 Conn. 842–43. In other words, "a petitioner claiming ineffective assistance of

habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . ." *LaPointe* v. *Commissioner of Correction,* 113 Conn. App. 378, 394, 966 A.2d 780 (2009).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." (Citation omitted; internal quotation marks omitted.) *Bharrat* v. *Commissioner of Correction,* 167 Conn. App. 158, 167–68, 143 A.3d 1106, cert. denied, 323 Conn. 924, A.3d (2016). With respect to the prejudice prong, the petitioner must establish that if he had received effective representation by habeas counsel, there is "a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Internal quotation marks omitted.) *Crocker* v. *Commissioner of Correction,* 126 Conn. App. 110, 117, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011).

It is well settled that in reviewing the denial of a habeas petition alleging the ineffective assistance of counsel, "[t]his court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Robinson* v. *Commissioner of Correction,* 167 Conn. App. 809, 817, 144 A.3d 493 (2016).

The petitioner's sole claim on appeal is that the habeas court improperly determined that he had failed to prove that his prior habeas counsel provided ineffective assistance. Having thoroughly reviewed the record presented, we conclude that the habeas court properly denied the petition for a writ of habeas corpus.

We first clarify that our review of the petitioner's ineffective assistance claim is limited to those specifications of deficient performance properly raised before and considered by the habeas court. Although the petitioner alleged in the underlying habeas petition that his trial counsel was ineffective in a variety of ways, his allegations regarding habeas counsel were much

more limited.[3]

Our review of the operative amended habeas petition, the transcripts of the habeas trial, and the petitioner's posttrial brief reveals that the only argument properly before the habeas court regarding the alleged deficient performance by Zils Gagne was that she had failed to raise in the first habeas action those specifications of ineffective assistance of trial counsel that the petitioner set forth in the second habeas petition. The petitioner argues in his appellate brief that Zils Gagne also was ineffective because, like trial counsel, she failed to consult with a forensic psychologist or some other party with sufficient expertise in evaluating child sexual abuse allegations. He did not, however, include that particular specification in his habeas petition or raise the argument at the habeas trial or in his posttrial brief. In fact, in the petitioner's posttrial brief, the analysis was limited almost entirely to a discussion of his trial counsel's performance without any independent discussion of Zils Gagne's performance, including whether she should have consulted with an expert.[4]

Accordingly, the only issue is whether the petitioner proved before the habeas court that Zils Gagne provided ineffective assistance by failing to raise and prosecute the claims of ineffective assistance of trial counsel set forth in count one of the habeas petition. See footnote 2 of this opinion. In his reply brief, the petitioner has defined his claim on appeal in even narrower terms, describing the singular issue before this court as whether "habeas counsel rendered ineffective assistance in her failure to raise and litigate a claim that trial counsel rendered ineffective assistance by his failure to retain, consult with and offer the testimony of a forensic psychiatrist, psychologist or other mental health professional with expertise in investigating and evaluating child sexual abuse allegations." In so doing, the petitioner has abandoned many unrelated issues.

The habeas court, however, determined that the petitioner had failed to demonstrate that he was prejudiced by trial counsel's performance with respect to the consultation with and presentation of a child sexual abuse expert. It follows that Zils Gagne's failure to raise a related claim in the prior habeas action was not professionally deficient performance. In its memorandum of decision, the habeas court stated as follows: "Regarding the petitioner's specification of ineffectiveness premised on [trial counsel's] failure to consult with and present the testimony of a sexual abuse expert for the defense, the court finds that the petitioner has failed to prove, by a preponderance of the evidence, the prejudice component of the *Strickland* test. [Blanchard] identified in his testimony those areas that such an expert *might* have assisted defense counsel, but no credible evidence was produced which persuades the court that there exists a reasonable likelihood that, but

for the absence of such consultation, the outcome of the criminal trial would have differed.

"A major difficulty for the petitioner to overcome was that, not one, but three preteen girls all swore that the petitioner sexually molested them. No persuasive evidence of any conspiracy to fabricate allegations against the petitioner or mutuality of motive to lie about his behavior was adduced at his criminal trial, his first habeas trial, or [in] the present case. The three girls were not very young children as their ages ranged from nine to thirteen when the assaults occurred.

"The petitioner contends, therefore, that it was incumbent upon [trial] counsel to point to the girls' 'aunt,' Juanita W., to account for why they would wrongfully implicate him. He argues that [trial counsel] needed to probe into Juanita's past and psyche to establish that she was hypervigilant to the possibility of preteen molestation because she had endured such abuse. Also, Juanita W.'s sister was the petitioner's wife when the petitioner left her to cohabit with his wife's daughter, a teenager.

"As to the latter circumstance, the evidence unquestionably showed that Juanita W. felt that the petitioner had brought shame and scandal to her extended family by consorting with his stepdaughter. The petitioner complains that [trial counsel] ought to have explored the topic of this family dynamic more extensively to convince the jury that Juanita W. somehow coaxed the three victims to concoct false accusations of sexual abuse by him. The court concludes that this tactical approach would have been self-defeating and unlikely to accomplish the goal proposed.

"First, it would emphasize that the petitioner had a penchant for sexual relations with teenagers. Second, and, more significantly, the petitioner's [trial counsel] would necessarily have to have argued that the collusion was a response for having incurred shame for the family by accusing the petitioner of committing even more reprehensible acts and bringing greater shame down upon the family.

"Besides the absurdity of that argument for why the three girls all falsely reported abuse by the petitioner while under the vengeful spell of Juanita W., this court had the benefit of having Juanita W. testify at the habeas trial. She came across as an honest, caring woman, who learned of the [sexual] abuse complaints in a straight forward manner. She made a genuine effort to take appropriate steps to help the three girls. The court determines that the jury would have reacted likewise to her testimony."

The habeas court, which heard testimony from a defense expert at the habeas trial, further rejected the petitioner's argument that a defense expert would have been useful in countering the testimony of the state's

sexual abuse expert, Lisa Melillo, finding that the experts' opinions were "essentially consistent on the primary feature revealed by [Melillo], namely, delayed disclosure." Finally, the court rejected any notion that consultation with an expert would have aided counsel with the cross-examination of the victims and other prosecution witnesses, concluding that "the petitioner's specifications of ineffective assistance on these grounds is meritless." The habeas court found that trial counsel handled their cross-examinations "delicately, deftly, and thoroughly" and that, accordingly, "Zils Gagne quite properly declined to raise any claims of deficient performance in this regard." The petitioner has not shown that the habeas court made any factual findings that are clearly erroneous, and we agree with the habeas court's analysis regarding lack of prejudice and Zils Gagne's performance.

Having thoroughly reviewed the record presented, we conclude that the petitioner has failed to meet his burden of demonstrating that his previous habeas counsel's performance fell outside of the wide range of reasonable professional assistance, and, in particular, has failed to demonstrate that but for habeas counsel's performance there is a reasonable probability that the habeas court would have found in favor of the petitioner and granted a new trial. Accordingly, the habeas court properly denied the amended petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] The habeas court granted certification to appeal from the judgment.

[2] Paragraph 28 of the amended habeas petition provided as follows: "The petitioner's trial counsel's performance was deficient because:

(A) he failed to retain, consult with, and present the testimony of, a forensic psychologist, forensic psychiatrist, or other mental health professional, with an expertise in investigating and evaluating child sexual abuse allegations;

(B) he failed to adequately seek production and disclosure of educational records, psychological records, medical records, [department] records, police records, and other records related to the forensic investigation and evaluation of the complainants' allegations;

(C) he failed to adequately present alternative innocent explanations for the child sexual abuse allegations made against petitioner, and he failed to adequately present testimony that contradicts, refutes, and otherwise challenges the complainants' allegations;

(D) he failed to adequately challenge the prosecuting authority's failure to investigate and rule out alternative innocent explanations for the child sexual abuse allegations made against the petitioner;

(E) he failed to adequately cross-examine, impeach, and otherwise challenge the testimony of the complainants;

(F) he failed to adequately cross-examine, impeach, and otherwise challenge the testimony of Cynthia Williams;

(G) he failed to adequately cross-examine, impeach, and otherwise challenge the testimony of Victoria Hester;

(H) he failed to adequately cross-examine, impeach, and otherwise challenge the testimony of Juanita W.;

(I) he failed to adequately cross-examine, impeach, and otherwise challenge the testimony of Officer Jessica Tillson;

(J) he failed to adequately cross-examine, impeach, and otherwise chal-

lenge the testimony of Officer Sandra Gonzalez;

(K) he failed to adequately cross-examine, impeach, and otherwise challenge the testimony of Lisa Bush;

(L) he failed to adequately challenge the misapplication of the Connecticut rape shield statute to charges of risk of injury to a minor; and

(M) he failed to object to improper appeals to the jurors as parents made during the prosecuting authority's closing arguments."

[3] "It is well settled that [t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . [Although] the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." (Internal quotation marks omitted.) *Newland* v. *Commissioner of Correction*, 322 Conn. 664, 678, 142 A.3d 1095 (2016).

[4] Although we do not reach the issue, the record does not appear to support the notion that Zils Gagne's failure to consult with a mental health expert rendered her unprepared to litigate the habeas action. As the habeas court found, at the time Zils Gagne represented the petitioner, she was an experienced criminal defense lawyer. She had tried approximately twenty other habeas actions. In addition, her uncontested testimony during the habeas trial was that she had handled direct criminal appeals that involved child sexual abuse and, thus, was familiar with how such cases were defended. The habeas court's findings also establish that Zils Gagne thoroughly researched the facts and the law at issue in the case. She obtained and reviewed the petitioner's defense file, discussed the case with the petitioner at length, including his expectations and his complaints concerning his trial attorney, and reviewed the transcripts and the evidence from the criminal trial. She reviewed on more than one occasion the forensic interviews conducted of the victims, including one time in the presence of the petitioner. On the basis of her review, she found the victims' statements in those interviews credible and, despite some inconsistencies, likely to have been believed by a jury if admitted at trial. Given the petitioner's inability to provide her with any innocent explanation for the allegation made by the three victims, she ultimately reached the conclusion that it would have been highly detrimental to the defendant's case if the forensic interviews had been admitted into evidence and viewed by the jury.