******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EDWARD M. *v.* COMMISSIONER OF CORRECTION*
(AC 41405)

DiPentima, C. J., and Lavine and Pellegrino, Js.

*Syllabus*

The petitioner, who had been convicted of sexual assault in the first degree
and risk of injury to a child, filed an amended second petition for a writ
of habeas corpus, claiming that D, the habeas counsel who represented
him in his first habeas action, had rendered ineffective assistance. Specif-
ically, the petitioner alleged that D rendered ineffective assistance as
habeas counsel by neglecting to allege that the petitioner's trial counsel,
O, rendered ineffective assistance at the criminal trial by failing to have
the petitioner examined by a physician or otherwise present evidence
regarding the petitioner's circumcision. The habeas court found, inter
alia, that O did present the testimony of the petitioner and A, his girlfriend
at the time of the alleged abuse, that the petitioner was circumcised,
and that that testimony directly conflicted with the testimony of the
victim and her mother, who stated that he was uncircumcised. The court
held that the import of medical evidence or photographs was clear
because the petitioner could not simultaneously be circumcised and
uncircumcised. The habeas court granted the second petition for a
writ of habeas corpus and rendered judgment thereon, from which
the respondent, the Commissioner of Correction, on the granting of
certification, appealed to this court. On appeal, the respondent claimed
that the habeas court incorrectly determined that evidence of whether
the petitioner was circumcised at the time of trial, which occurred years
after the alleged abuse, was relevant and admissible at trial, disregarded
O's tactical decision to present evidence of the petitioner's circumcised
penis only by means of testimonial evidence, and relied on O's admission
that his failure to present physical evidence was a mistake. *Held*:
1. The habeas court properly determined that O's conduct fell below the
   wide range of reasonable professional assistance: any independent evi-
   dence of the petitioner's circumcision, even after the alleged assaults,
   would have met the low standard for relevance of evidence, as such
   evidence needs only to slightly support, or make more probable, that
   the petitioner was circumcised during the time of the alleged assaults,
   and O's failure to offer additional evidence regarding the petitioner's
   circumcision could not be justified as a strategic decision to present
   evidence of the petitioner's circumcised penis only by means of testimo-
   nial evidence, as O knew from the onset of the case that a central issue
   was whether the petitioner was circumcised at the time of the alleged
   crimes, O admitted that there was no strategic reason for not presenting
   physical evidence of the circumcision and that he was distracted by
   other evidence in the case, O's failure to recognize the importance
   of medical records or other independent evidence of the petitioner's
   circumcision was objectively unreasonable and clear from the record,
   and, thus, the need to present such additional evidence beyond the
   arguably discredited testimony of the petitioner and A should have been
   obvious; moreover, the habeas court properly concluded that D also
   rendered ineffective assistance of counsel, as O rendered ineffective
   assistance, and D failed to raise that as a claim in the petitioner's first
   habeas trial even though the petitioner had included that claim in his
   pro se petition and even though O tried to convey to D that he thought
   the circumcision issue was the most fruitful area for inquiry.
2. The respondent could not prevail on the claim that any alleged prejudice
   to the petitioner due to O's failure to offer medical records, photographs,
   or other evidence showing that the petitioner was circumcised was
   speculative: there was a reasonable probability that further evidence of
   the petitioner's circumcision would have caused a different result, as
   the petitioner received a fifty year sentence based, to a significant degree,
   on the testimony from the victim and her mother that conflicted with
   the testimony from the petitioner and A over whether the petitioner
   was circumcised at the time of the alleged crimes, and the prejudicial
   effect of the absence of that evidence was not merely speculative, as a

note from the jury asking why there was no medical evidence of the petitioner's circumcision clearly indicated that the jury was concerned about that issue; accordingly, the petitioner was prejudiced by O's failure to provide independent evidence of the petitioner's circumcision and, thus, was also prejudiced by D's performance in failing to raise this claim during the first habeas appeal.

Argued October 10—officially released December 25, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Graham, J.*; judgment granting the petition, from which the respondent, on the granting of certification, appealed to this court. *Affirmed.*

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, *Angela Macchiarulo*, senior assistant state's attorney, and *Michael Proto*, assistant state's attorney, for the appellant (respondent).

*Jennifer B. Smith*, assigned counsel, for the appellee (petitioner).

*Opinion*

LAVINE, J. This appeal arises out of the habeas court's granting of the second petition for a writ of habeas corpus filed by the petitioner, Edward M. The respondent, the Commissioner of Correction, appeals from the judgment of the habeas court, claiming that the court improperly (1) used the petitioner's hospital records for a purpose other than for which they were admitted[1] and (2) concluded that the petitioner's prior habeas counsel was ineffective and caused prejudice to the petitioner by failing to allege the ineffective assistance of the petitioner's criminal trial counsel, who failed to present evidence regarding the petitioner's circumcised penis. We disagree and, therefore, affirm the judgment of the habeas court.

The following facts and procedural history, as set forth in the habeas court's memorandum of decision, are relevant to our resolution of the issues on appeal. The petitioner was arrested in the underlying criminal matter in April, 2007, and charged with five counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) for crimes he was alleged to have committed in 2004, 2005, and 2006. Attorney John O'Brien represented the petitioner in his 2008 criminal trial.

The habeas court found: "The case arose from sexual abuse allegations that the complainant daughter, J, made against her biological father, [the petitioner]. There was no physical evidence of sexual abuse and, as the state admitted in closing argument at the criminal trial, the case was a contest of credibility between [the petitioner] and his daughter."

In a forensic interview, J described the petitioner's penis as having skin on it and wrinkles. At trial, J and her mother testified that the petitioner was uncircumcised. The petitioner, as well as A, his girlfriend at the time of the alleged abuse, testified that he was circumcised at the time of the alleged assaults. O'Brien did not offer the petitioner's medical records, testimony from a neutral third party or medical witness, or photographs of the petitioner's penis into evidence.

The habeas court further stated: "During the first day of deliberations, the jury sent out a note, [asking]: 'Why wasn't there medical certification of his [circumcision] . . . obtained for evidence.' The court instructed the jury that they needed to decide the case based on the evidence presented by counsel. On the third day of deliberations . . . the jury [found the petitioner guilty] of all seven counts." The trial court sentenced the petitioner to a total effective term of fifty years incarceration followed by fifteen years of special parole. This court upheld the conviction in *State* v. *Edward M.*, 135 Conn. App. 402, 41 A.3d 1165, cert. denied, 305 Conn.

914, 46 A.3d 172 (2012).

In 2009, the self-represented petitioner filed a petition for a writ of habeas corpus. In that habeas action, the petitioner's appointed counsel, Christopher Duby, filed an amended petition but did not allege that O'Brien rendered ineffective assistance due to his failure to offer evidence that the petitioner was circumcised. The petition was denied. The petitioner filed and then withdrew an appeal of that judgment. In 2014, the petitioner initiated the present habeas proceeding. In 2017, the petitioner filed an amended habeas petition, alleging that Duby rendered ineffective assistance as habeas counsel by neglecting to allege that O'Brien rendered ineffective assistance at the criminal trial by failing to have the petitioner examined by a physician or otherwise present evidence regarding the petitioner's circumcision. The habeas court granted the amended petition, and the respondent, on the granting of certification, appealed. Additional facts will be set forth as necessary.

"Our standard of review in a habeas corpus proceeding challenging the effective assistance of [prior habeas] counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a [petitioner] received at [a prior habeas proceeding] was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 797, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413, cert. denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004).

"The use of a habeas petition to raise an ineffective assistance of habeas counsel claim, commonly referred to as a habeas on a habeas, was approved by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992). In *Lozada*, the court determined that the statutory right to habeas counsel for indigent petitioners provided in General Statutes § 51-296 (a) includes an implied requirement that such counsel be effective, and it held that the appropriate vehicle to challenge the effectiveness of habeas counsel is through a habeas petition. . . . In *Lozada*, the court explained that [t]o succeed in his bid for a writ of habeas corpus, the petitioner must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective. [Id., 842]. As to each of those inquiries, the petitioner is required to satisfy the familiar two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d (1984)]. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both

showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. *Lozada* v. *Warden*, supra, 842–43. In other words, a petitioner claiming ineffective assistance of habeas counsel on the basis of ineffective assistance of trial counsel must essentially satisfy *Strickland* twice . . . .

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; [but] strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . With respect to the prejudice prong, the petitioner must establish that if he had received effective representation by habeas counsel, there is a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . ." (Citations omitted; internal quotation marks omitted.) *Gerald W.* v. *Commissioner of Correction*, 169 Conn. App. 456, 463–65, 150 A.3d 729 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017).

I

The respondent claims that the habeas court improperly determined that Duby rendered ineffective assistance by failing to allege that the petitioner's criminal trial counsel was ineffective for failing to present certain evidence regarding the petitioner's circumcision. Specifically, the respondent claims that the habeas court incorrectly (1) determined that evidence of whether the petitioner was circumcised at the time of trial, which occurred years after the alleged abuse, was relevant and admissible at trial,[2] (2) disregarded O'Brien's tactical decision to present evidence of the petitioner's circumcised penis only by means of testimonial evidence, and (3) relied on O'Brien's admission that his failing to present physical evidence was a mistake. We are unpersuaded.

The habeas court found that "O'Brien did present the testimony of the petitioner and [A] that [the petitioner] was circumcised. Their testimony directly conflicted with the testimony of J and her mother that the petitioner was uncircumcised. The import of independent and neutral medical evidence, or of photographs, is clear because the petitioner cannot simultaneously be

circumcised and uncircumcised. . . .

"[P]hotographs of [the petitioner's] penis, showing him to be circumcised, were placed into evidence at the second habeas trial . . . after foundation questions established that they fairly and accurately showed his penis both as it looked at the current time and as it looked from 2002 to the present. . . .

"The relevancy of such contemporary photographic and medical record evidence at the criminal trial is readily apparent . . . ." The respondent claims that the habeas court erred in reaching that conclusion, and argues that any contemporaneous photographs and medical records would be irrelevant to the question of whether the petitioner was circumcised during the time in which the assaults occurred. We disagree.

The well settled standard for relevance of evidence is extremely low. " 'Relevant evidence' means evidence having *any tendency* to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Emphasis added.) Conn. Code Evid. § 4-1. "It is axiomatic that, in order to be admissible, evidence must be relevant to an issue in the case in which it is offered. Evidence need not be conclusive to be relevant . . . and [t]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible. . . . Evidence is relevant if it has a logical tendency to aid the trier in the determination of an issue. . . . We have also held that evidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Citations omitted; internal quotation marks omitted.) *State* v. *Marra*, 222 Conn. 506, 521, 610 A.2d 1113 (1992). "Although it may be the case that this evidence would not have exonerated the defendant unequivocally, such is not the standard for relevance." *State* v. *Cerreta*, 260 Conn. 251, 263, 796 A.2d 1176 (2002).

The respondent argues that the evidence available to O'Brien through medical records in his file, photographs, or third-party examination would only establish that the petitioner was circumcised in 2008, two years after the abuse ended, and would, thus, be irrelevant. To be relevant, however, the evidence offered need not show definitively that the petitioner was circumcised in 2004, 2005, or 2006. To be relevant, the proffered evidence needs only to *slightly* support, or make more *probable*, that the petitioner was circumcised during that time period. Any evidence of the petitioner's circumcision, even after the alleged assaults, would meet that low burden. The inference to be drawn from such

evidence is a determination that is proper for a jury, and not the court.[3] Likewise, whether to give such evidence no weight, little weight, or much weight, is up to the jury.

O'Brien's failure to offer such evidence was error and not, as the respondent argues, a tactical decision. O'Brien knew from the onset of the case that a central issue was whether the petitioner was circumcised at the time of the alleged crimes, and, thus, he was aware that establishing the fact that the petitioner was circumcised was of paramount importance.[4] Yet, O'Brien relied on the testimony of the petitioner and A alone to establish that the petitioner was circumcised at the time of the alleged crimes, despite the fact that both witnesses arguably had been discredited[5] and O'Brien had at his disposal multiple ways of introducing evidence that the petitioner was circumcised at the time of trial. O'Brien admitted that he did not consider taking a photograph and offering it or having some appropriate person view the petitioner's circumcised penis and testify.

This failure to offer additional evidence regarding the petitioner's circumcision cannot be justified as a strategic decision. O'Brien testified, "in all candor, I was distracted . . . ." He admitted that there was no strategic reason for not presenting physical evidence of the circumcision and conceded that failing to present physical evidence was a "huge mistake" that he "missed." O'Brien testified, "I thought I did not have any other evidence to offer at that point in time . . . . I felt that there was nothing more I could do about the circumcision issue, when now or within days of the verdict, I recognized there were five or six or twenty-seven things I could have done about the circumcision issue, even though I had medical records in my hand." As the habeas court states in its memorandum of decision, "O'Brien offered no tactical justification for not offering the certified medical records or a photograph of [the petitioner's] privates. . . . Indeed, in disarmingly candid testimony, O'Brien admitted that he was distracted from the issue by other evidence in the case and 'missed' the [importance of the medical records]."[6]

The court also stated: "Given that the physical condition in question is circumcision, a permanent surgical procedure, given that [the petitioner] was thirty-five years old at the time of the criminal trial, at least thirty-one at the time of the charged criminal acts, and that he testified that he was circumcised at a young age, given that his circumcised state was in dispute and important in testing the credibility of J as to serious sexual assault charges and coincidentally, or not, that of her mother as well, and given that there was no physical evidence of the assaults," the importance of offering the certified medical or photographic evidence should have been recognized by competent counsel and "could have been easily offered by competent counsel

at that criminal trial with standard foundation questions . . . ." (Footnote omitted.) The failure to recognize the importance of the medical records or other independent evidence of the petitioner's circumcision is one that is objectively unreasonable and clear from the record. The need to present additional evidence beyond the testimony of the petitioner and A should have been obvious, and is not based, as the respondent argues, on O'Brien's regret in hindsight. We, therefore, agree with the habeas court that O'Brien's conduct fell below the wide range of reasonable professional assistance.

Additionally, it is clear that Duby rendered ineffective assistance of counsel, as the habeas court concluded. In the first habeas trial, Duby failed to allege that O'Brien rendered ineffective assistance by neglecting to present additional evidence of the petitioner's circumcision, even though the petitioner had included this claim in his pro se petition. Duby's testimony to the habeas court indicated that he might be confusing the petitioner's case with another similar case, and that he did not "remember if the issue of circumcision came up at the criminal trial such to the point that it would have been that distinctive." Additionally, O'Brien testified that he "effusively" told Duby his thoughts on the circumcision claim and "tried to convey to Attorney Duby that [he] thought [the circumcision issue] was the most fruitful area for . . . inquiry . . . ." As was stated in the habeas court's memorandum of decision, "[r]easonably competent habeas counsel would have investigated the claim identified by the petitioner and presented the available evidence to the first habeas court . . . . That failure, to a reasonable probability, prejudiced [the petitioner] by depriving him of the same successful outcome on the circumcision issue in his first habeas trial as was achieved in this second habeas trial." As O'Brien rendered ineffective assistance, and Duby failed to raise that as a claim in the petitioner's first habeas trial, we agree with the habeas court that Duby rendered ineffective assistance as well.

## II

The respondent's final claim is that any alleged prejudice to the petitioner due to O'Brien's failure to offer medical records, photographs, or other evidence showing that the petitioner was circumcised was speculative. We disagree.

The petitioner received a fifty year sentence based, to a significant degree, on the testimony from J and her mother that conflicted with the testimony from the petitioner and A over whether the petitioner was circumcised at the time of the alleged crimes. This question was the major point of dispute at trial. We conclude that there is a reasonable probability that further evidence of the petitioner's circumcision would have caused a different result. Notably, "it is of particular significance that we need not speculate about the prejudicial effect

that the [absence of the] evidence could have had on the jury in this case, because the jury's note to the court during deliberations provides insight into the facts that the jury considered when it was reaching its verdict." *State* v. *Miguel C.*, 305 Conn. 562, 577, 46 A.3d 126 (2012). In the present case, the jury's note, sent on the first day of deliberations, asking why there was no medical evidence of the petitioner's circumcision, clearly indicates that the jury was concerned about this issue.

We, therefore, conclude that the petitioner was prejudiced by O'Brien's failure to provide evidence of the petitioner's circumcision and, thus, was also prejudiced by Duby's performance in failing to raise this claim during the first habeas appeal. "Prejudice in this case means that but for habeas counsel's ineffectiveness, there would be a reasonable probability that the habeas court would have found that the petitioner is entitled to a new trial." *Harris* v. *Commissioner of Correction*, 108 Conn. App. 201, 210 n.3, 947 A.2d 435, cert. denied, 288 Conn. 911, 953 A.2d 652 (2008). But for Duby's failure to allege the successful claim of ineffective assistance of trial counsel for neglecting to present evidence regarding the petitioner's circumcised penis, there is a reasonable probability that the first habeas court would have found in favor of the petitioner and granted a new trial. Accordingly, we agree with the habeas court that Duby rendered ineffective assistance.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] The respondent argues that the hospital records were admitted into evidence solely for the purpose of demonstrating what trial counsel had available in his file and that the habeas court erred in considering the substance of the records. Even if, as the respondent argues, the habeas court erred in finding that the hospital records would have established that the petitioner was circumcised at the time he was admitted to the hospital in 2008, any error is harmless. There was ample admissible evidence that the petitioner was circumcised at the time of his trial in 2008. We, therefore, need not address this claim.

[2] The respondent additionally argues that there was no evidence that the medical records in O'Brien's file would have been admissible under a business record exception, but fails to argue any reason for inadmissibility other than relevance. Therefore, we only address the relevance issue.

[3] In response to such evidence at trial, the state could have argued or presented evidence that the petitioner was not circumcised during childhood.

[4] Given that O'Brien testified that he had actually viewed the petitioner's penis, he should have recognized the importance of neutral additional evidence of the petitioner's circumcision.

[5] Notably, O'Brien testified that he did not consider that the jury might not credit the testimony of the petitioner or A even though the petitioner had a perjury conviction and A was impeached with welfare fraud. The following exchange occurred between the petitioner's habeas counsel and O'Brien:

"Q. At the time of the trial, did you consider that the jury might not credit the petitioner's testimony that he was circumcised because of his prior perjury conviction?

"A. That—that thought did not occur to me. . . . I didn't consider the

perjury conviction of him once we were able to explain it. I did not expect that it would be a proper basis for anyone to disbelieve or discredit all of his testimony.

"Q. Did you consider that the jury might not credit his girlfriend's testimony because she was impeached on [cross-examination] with welfare fraud?

"A. That thought did not occur to me."

[6] It is noteworthy that the state and the court drew attention to the circumcision issue and the medical records, and O'Brien still failed to offer any additional available evidence of the petitioner's circumcision. During the testimony of A, the state informed the habeas court that it was considering having the petitioner examined, highlighting the importance of whether the petitioner was circumcised. Furthermore, at the time when there were discussions between counsel and the court about a potential examination, the court noted that the petitioner's hospital records were unsealed and that O'Brien was not intending to use them. Rather than recognizing the record's importance with regard to the circumcision issue, O'Brien reaffirmed that he was not going to use the records.

----